UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| STEPHEN LEE CZAPLA, | ) | CASE NO. C08-0084-RSM-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| OFFICER KELLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Stephen Czapla alleges in his amended complaint that Seattle Police Officers Kelley and Wilkes, and other unidentified officers, used excessive force in effectuating his arrest on August 16, 2007. Defendants Kelley and Wilkes now move for summary judgment. Plaintiff also moves for summary judgment. The Court, having considered the pending motions, the briefs of the parties, and the balance of the record, concludes that defendants' motion for summary judgment should be granted, plaintiff's motion for summary judgment should be denied, and this action should be dismissed with prejudice as to plaintiff's claims against officers Kelley and Wilkes.

# FACTUAL BACKGROUND

On August 16, 2007, Seattle police officers responded to a call regarding a suspicious person and possible violations of a domestic violence no-contact order. (*See* Dkt. Nos. 27, 28 and 29.) Officers Kelley and Wilkes responded to the call as backup officers and, having received a description of the suspect, began to conduct an area check. (Dkt. No. 27 at 2; Dkt. No. 28 at 2.) The officers located the suspect, later identified as Stephen Czapla, near South Dearborn Street and 23rd Avenue South. (*Id.*) The officers stopped plaintiff, who was on a bicycle, and Officer Wilkes directed him to lie face down on the ground and to spread his arms out. (*Id.*) Plaintiff complied with Officer Wilkes' directive. (*Id.*) Officer Wilkes then placed handcuffs on plaintiff and conducted a search incident to plaintiff's arrest. (Dkt. No. 28 at 2-3.) Plaintiff was thereafter assisted to his feet and was placed in the patrol car of Officer Conners, one of several other officers who responded to the location of the arrest. (Dkt. No. 27 at 3; Dkt. No. 28 at 2; Dkt. No. 29 at 2.) Neither Officer Kelley nor Officer Wilkes had any further contact with plaintiff after that. (Dkt. No. 27 at 3; Dkt. No. 28 at 2.)

Officer Conners transported plaintiff to the East Precinct of the Seattle Police Department. (Dkt. No. 29 at 2.) After arriving at the East Precinct, Officer Conners placed plaintiff in a holding cell. (*Id.* at 3.) Plaintiff became disruptive after Officer Conners closed the cell door, but calmed down when another officer threatened to use a Taser. (Id.) At some point thereafter, while officers were preparing plaintiff's booking paperwork, plaintiff told Officer Conners that his shoulder was "out-of-joint." (*Id.*) Officer Conners called the Seattle Fire Department and an aid unit responded. (*Id.*) Plaintiff was examined by aid unit personnel who determined that he had not suffered any injury. (*See id.* and Dkt. No. 26, Ex. A

at 2.) Plaintiff was therefore left with officers at the East Precinct rather than being transported to the hospital. (*See* Dkt. No. 26, Ex. A at 2; Dkt. No. 29 at 3.)

## PROCEDURAL BACKGROUND

On January 18, 2008, the Court received plaintiff's original civil rights complaint for filing. (See Dkt. No. 1.) Because of deficiencies in that complaint, this Court declined to serve the complaint, but granted plaintiff an opportunity to amend. (Dkt. No. 8.) On March 4, 2008, plaintiff filed an amended complaint in which he asserted claims against seven different defendants. (Dkt. No. 9.) After reviewing plaintiff's amended complaint, this Court recommended to the Honorable Ricardo S. Martinez, United States District Judge, that plaintiff's claims against five of the seven named defendants be dismissed and that plaintiff be permitted to proceed only on the excessive force claim asserted against officers Kelley and Wilkes. (Dkt .No. 11.) Judge Martinez adopted this recommendation on June 2, 2008, and, on June 16, 2008, plaintiff's amended complaint was ordered served on officers Kelley and Wilkes. (Dkt. Nos. 13 and 17.)

On January 30, 2009, defendants filed the pending motion for summary judgment in which they argue that plaintiff cannot establish any constitutional violation because neither Officer Kelley nor Officer Wilkes used any excessive force during the arrest. (Dkt. No. 25.) Defendants submitted in supported of their motion the declarations of officers Kelley, Wilkes, and Conners. (Dkt. Nos. 27, 28, and 29.) Defendants also submitted a copy of the Seattle Fire Department Medical Incident Report prepared as a result of the aid unit response to examine plaintiff on August 16, 2007, and a copy of an in-car video of plaintiff's arrest obtained from a camera mounted in Officer Conners' patrol car. (See Dkt. No. 26.)

On February 26, 2009, plaintiff filed his own motion for summary judgment.[1] (Dkt. No. 33.) Plaintiff reasserts in his motion that he suffered a separated shoulder on August 16, 2007, as a result of the actions of officers Kelley and Wilkes. (*Id.*) However, most of the argument set forth in plaintiff's motion concerns not the excessive force incident, but the alleged denial of necessary medical care for the shoulder injury. (*Id.*) Plaintiff does not offer any evidence in support of his motion, but he does request therein that certain x-rays, medical records, and other documentation be provided to him. (*See* Dkt. No. 33.) Plaintiff appears to be of the belief that these materials will provide evidentiary support for his claims of inadequate medical care.

Defendants filed a reply brief in support of their motion for summary judgment as well as a response to plaintiff's motion for summary judgment. (Dkt. Nos. 34 and 35.) Plaintiff filed a document which he appears to identify as both a response to defendants' summary judgment motion and a reply brief in support of his own motion for summary judgment. (Dkt. No. 37.) The briefing is complete and the pending motions are ripe for review.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1] The Court notes that plaintiff's summary judgment motion was filed almost a month after the deadline for filing such motions had passed.

242, 257 (1986).  Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party."  *Id.*  Material facts are those which might affect the outcome of the suit under governing law.  *Id.*

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the non-moving party.  *Id.* at 248.  The court may not weigh the evidence or make credibility determinations.  *Id.*

<u>Defendants' Summary Judgment Motion</u>

Defendants argue in their motion for summary judgment that plaintiff's excessive force claims must be dismissed because defendants did not violate any of plaintiff's constitutional rights.  The standard for analyzing claims of excessive force was established by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989).  Graham instructs that such claims are to be evaluated under the Fourth Amendment's reasonableness standard:  "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* at 397 (citation omitted).  The Court cautioned that reasonableness must be assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments -- in

circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 397.

The *Graham* Court made clear that proper application of the reasonableness standard requires careful consideration of the specific facts and circumstances of each individual case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The evidence presented by defendants in support of their summary judgment motion amply demonstrates that at no time did any of the officers present at the scene of plaintiff's arrest on August 16, 2007, use any excessive force or act in any fashion that could be deemed objectively unreasonable. Plaintiff's specific claim is that after he was handcuffed, but was still lying on the ground, seven to ten officers picked him up off the ground and slammed him back into the pavement. The in-car video of the incident conclusively refutes this claim. The video shows plaintiff being handcuffed while lying face down on the ground. Once handcuffed, plaintiff was searched and some sort of bag was removed from his back. Plaintiff protested briefly when officers raised his arms so that they could slide the bag out from underneath his restrained hands, but plaintiff otherwise gave no indication that he was in any pain or that he had suffered any injury as a result of defendants' actions. Once the search was completed, plaintiff got up off the pavement, with only slight assistance from officers, and Officer Conners led plaintiff to his patrol car.

The declarations of the officers make clear that plaintiff's first complaint of pain or injury came after he had been transported to the East Precinct by Officer Conners. (*See* Dkt.

01 Nos. 27, 28, and 29.) Officer Conners responded to the complaint by calling the Seattle Fire

02 Department. (Dkt. No. 29 at 3.) However, the Seattle Fire Department Medical Incident

03 Report confirms that plaintiff was not injured. (Dkt. No. 26, Ex. A.) Plaintiff offers no

04 evidence to refute any of that presented by defendants.[2] Accordingly, defendants are entitled

05 to summary judgment on plaintiff's claims of excessive force.

06 <u>Plaintiff's Motion for Summary Judgment</u>

07 Plaintiff argues in his motion for summary judgment that he was denied adequate

08 medical care for injuries suffered as a result of defendants' conduct on August 16, 2007.

09 Plaintiff's motion fails for various reasons. First, as noted above, plaintiff's motion was

10 untimely. Second, the evidence of record demonstrates that plaintiff made no complaints of

11 pain or injury at the scene of the arrest and that officers Kelley and Wilkes had no further

12 contact with plaintiff after he was placed in Officer Conners' patrol car. Thus, even assuming

13 plaintiff was denied adequate medical care for some sort of injury, nothing in the record

14 suggests that officers Kelley or Wilkes, the only two defendants remaining in this action,

15 personally participated in causing that particular harm. Thus, plaintiff has not adequately

16 alleged any cause of action against either Officer Kelley or Officer Wilkes with respect to the

17 denial of adequate medical care and plaintiff is therefore not entitled to summary judgment with

18 respect to that claim.

---

[2] Plaintiff asserts in his response to defendants' summary judgment motion that he has not viewed the video because he does not have access to a DVD player. The record reflects that defendants' motion papers, together with a copy of the compact disc containing the video, were mailed to plaintiff on January 30, 2009. Plaintiff did not raise his concern about being unable to view the video until March 19, 2009, almost three weeks after defendants' motion was noted for consideration. Plaintiff makes no showing that he could not have, through exercise of reasonable diligence, found a way to view the video in a timely fashion.

## CONCLUSION

For the foregoing reasons, this Court recommends that defendants' motion for summary judgment be granted, that plaintiff's motion for summary judgment be denied, and that this action be dismissed with prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 3rd day of April, 2009.

s/ Mary Alice Theiler
United States Magistrate Judge